IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| NEAL TECHNOLOGIES, INC. D/B/A BULLET PROOF DIESEL<br><br>Plaintiff,<br><br>v.<br><br>INNOVATIVE PERFORMANCE RESEARCH, LLC AND VINCE AU (A/K/A VINH CAM AU),<br><br>Defendants. | Case No.: 4:16-cv-00746-ALM<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S EMERGENCY MOTION TO COMPEL
DEFENDANTS' JURISDICTIONAL DISCOVERY RESPONSES**

Plaintiff Neal Technologies, Inc. ("NTI") hereby moves to compel Defendants Innovative Performance Research, LLC and Vince Au (a/k/a Vinh Cam Au) (collectively "Defendants") to correct deficiencies and supplement their jurisdictional discovery responses to begin in 2007, when Defendants first began manufacturing the accused products. In support thereof, Plaintiff would show the following:

## Introduction

In their January 13, 2017 jurisdictional discovery responses, Defendants provided responses to and production, in which Defendants unilaterally limited the relevant time period of their responses and production to on or after the date of filing of the patent-in-suit, or January 7, 2015. NTI contends the responsive discovery time period should begin on January 1, 2007. NTI submits Defendants could have resolved this issue by engaging Plaintiff's repeated attempts to discuss the proper window for discovery. Counsel for Plaintiff has repeatedly attempted to engage Defendants' counsel to pin down the proper timeframe to no avail. Plaintiff's jurisdictional discovery window closes on March 17, 2017; and therefore, Plaintiff seeks the Court's intervention to compel Defendants to comply with production and discovery responses.

In its General Objections to its discovery responses, Defendants *generally* cite to case law primarily regarding how courts should *apply* information acquired via discovery to determine jurisdiction, as opposed to engaging the threshold question of what the scope of any jurisdictional *discovery* should be. NTI shows that the scope of *discovery* is broader than what the Court may ultimately consider as the appropriate time period to be in resolving the jurisdictional dispute.

Without the Court's intervention to increase the timeframe for relevant production that was invoked by Defendants in their discovery responses, NTI will be hampered in responding to

Defendants' pending Motion to Dismiss. Accordingly, Plaintiff asks the Court to compel Defendants to correct deficiencies their discovery responses and supplement those responses by setting the time period to be covered for Defendants' responses and production to begin in January, 2007, which is when Defendants began manufacturing products.

## Procedural Background

On November 29, 2016, Defendants filed a Motion to Dismiss Defendants for Lack of Personal Jurisdiction or Improper Venue, or alternatively to Transfer the Case to the Central District of California (the "Motion to Dismiss"), alleging that neither Innovative Performance Research, LLC ("IPR") nor Vince Au (a/k/a Vinh Cam Au) ("Mr. Au") are subject to the Court's jurisdiction (Dkt. #11). Subsequently, on December 8, 2016, the parties filed an Agreed Motion for Leave to Conduct Jurisdictional Discovery Regarding Defendants' Motion to Dismiss ("Jurisdictional Discovery Motion"), wherein the parties agreed to a seventy-five (75) day period for conducting discovery limited to jurisdictional issues prior to Plaintiff responding to Defendants' Motion to Dismiss, including up to ten (10) requests for production per Defendant, up to five (5) interrogatories per Defendant, and oral depositions duces tecum of each Defendant taking no longer than a combined seven (7) hours total, with no more than 3.5 hours per Defendant (Dkt. #20). On December 9, 2016, the Court granted the Jurisdictional Discovery Motion (Dkt. #22), and subsequently on January 18, 2016, the Court extended the deadline for conducting jurisdictional discovery to March 17, 2017 (Dkt. #25).

Two business days after the Court's original order, on December 13, 2016, Plaintiff served Defendants with Plaintiff's Interrogatories to Defendant Innovative Performance Research, LLC ("IPR ROGs"), Plaintiff's Interrogatories to Defendant Vince Au a/k/a Vinh Cam Au ("Au ROGs"), Plaintiff First Set of Requests for Production to Defendant Innovative

Performance Research, LLC ("IPR RFPs"), and Plaintiff First Set of Requests for Production to Defendant Vince Au a/k/a Vinh Cam Au ("Au RFPs") (collectively, "Plaintiff's Discovery Requests"). Four of the five interrogatories requested a response including information "from 2007 through November 28, 2016," with the fifth interrogatory requesting a response including information "from September 10, 2010, through November 28, 2016 . . . ." IPR ROGs, Interrogatories 1-5. See Exhibits 1-4.

On January 13, 2017, Defendants served Defendant Innovative Performance Research, LLC's Response to Plaintiff First Set of Interrogatories to Defendant Innovative Performance Research, LLC [supplemented on Sunday, January 15, 2017] ("IPR's ROG Response"), Defendant Vince Au's Response to Plaintiff First Set of Interrogatories to Defendant Vince Au a/k/a Vinh Cam Au ("Au's ROG Response"), Defendant Innovative Performance Research, LLC's Response to Plaintiff First Set of Requests for Production to Defendant Innovative Performance Research, LLC ("IPR's Request Response"), and Defendant Vince Au's Response to Plaintiff First Set of Requests for Production to Defendant Vince Au a/k/a Vinh Cam Au ("Au's Request Response") (collectively, "Defendants' Discovery Responses"). In the General Objections in each of Defendants' Discovery Responses, Defendants' spend almost two pages objecting to the Requests and Interrogatories as seeking "information for an unreasonable, irrelevant or unspecific period of time, or temporal periods outside of the bounds of jurisdictional discovery in patent litigation cases." Defendants' Discovery Responses, General Objections ¶ J. See Exhibit 5 (General Objection ¶ J from IPR's ROG Response—identical in all of Defendants' Discovery Responses). Ultimately, Defendants' unilaterally and improperly limit the time period for all responses and productions to "on and after the date of filing of the patent-in-suit, or January 7, 2015." *Id.* at ¶ J(d).

In an e-mail chain dated January 17, 2017, Plaintiff's lead counsel, Mr. Richard L. Schwartz, e-mailed Defendants' lead counsel, Ms. Wendy Akbar, stating that "[w]e need an immediate meet and confer to discuss … Plaintiff's Emergency Motion to Compel for Defendants insufficient discovery responses that are unilaterally limited by Defendants to the time period beginning after January 7, 2015." See Ex. 6.

Later that same day, Ms. Akbar, sent a responsive e-mail stating that "As to a motion to compel, if you need to discuss prior to Thursday, please reach out to John Mascari." *Id*.

In an e-mail to Mr. Mascari on January 17, 2017, Mr. Schwartz asked Mr. Mascari for his "availability today or tomorrow." *Id*.

On January 18, 2017, Mr. Schwartz again emailed Ms. Akbar stating, "[t]o date … I have not heard from your partner John Mascari regarding a "meet and confer" time for our earlier referenced Emergency Motion to Compel … I reached out to him yesterday for a date and time as you suggested and received no response …Your suggestion last night at 7:23 pm to simply contact him by phone is insufficient under ED TX LR CV-7(h) 'meet and confer' requirements … which mandate communications between both parties' lead counsel and local counsel on all opposed discovery disputes … Given now my schedule for today and your unavailability … we will have that "meet and confer" tomorrow at 3:00 pm MST /4:00 pm CST …." See Ex. 7.

On Thursday, January 19, 2017, the parties had an extended "meet and confer" in compliance with the E.D. Tex. Local Rule, which included a detailed discussion of the factual basis (see *infra*) of NTI's Emergency Motion to Compel. Defendants ended the "meet and confer" on this issue indicating that they needed additional time to confer with their client.

On Friday, January 20, 2017, at 4:47 p.m., Defendants' counsel emailed Plaintiff's counsel stating, "I have not been able to talk to my client regarding the discovery issues; I hope to get back to you by Monday afternoon, or Tuesday morning at the latest." See Ex. 8.

After hearing nothing further from Defendants' counsel, Mr. Schwartz again e-mailed Ms. Akbar on Monday, January 23, 2017, stating, "[a]s to Plaintiff's Emergency Motion to Compel … Plaintiff will grant to Defendants a further deadline to respond … to noon CST tomorrow [Tuesday, January 24] …. Defendants are on notice the parties met and conferred beginning at 3:00 pm CST Thursday January 19 and no agreement was reached, but that Defendants' counsel was going to further confer with their clients … If Plaintiff does not have a satisfactory response from Defendants by noon CST tomorrow January 24 … Plaintiff will understand that the parties are at an impasse ... and Plaintiff will file its Emergency Motion …." *Id*. That deadline passed without resolution of the discovery dispute, and despite ongoing efforts by Plaintiff's counsel to obtain Defendants' agreement to provide the discovery required under applicable rules, the dispute is now ripe for the Court's consideration.

## The Factual Background

In this case, the time-frame inquiry that NTI believes to be appropriate is based on Defendants' declarations purported to provide evidentiary support of their Motion to Dismiss. In particular, IPR stated in its declaration (Dkt. #11-2) that "IPR LLC has been manufacturing products and operating as a business since 2007, selling products under the IPR name and logo. Through the late part of 2010, IPR LLC did business by selling products . . . through eBay." *Id*. ¶ 3. IPR referenced an invoice dated July 7, 2009 as an exhibit to its declaration. *Id*. ¶ 3. Further, IPR declared that "[o]n or about September 10, 2010, IPR LLC purchased the website domain name www.iprresearch.com. The site went online on or about December 2010. From that point

on, most of IPR's sales took place through the website . . . ." *Id.* ¶ 4. "[S]ince its website sales began on December 18, 2010 and through November 23, 2016, IPR LLC has sold a total of 11,728 products. *Id.* ¶ 19. Accordingly, IPR has opened the door to jurisdictional discovery going back to 2007, based on the facts recited in its own declaration.

With regard to Mr. Au, he stated in his declaration (Dkt. #11-1) that "IPR LLC is a business that I founded and manage." *Id.* ¶ 17. Mr. Au went on to state that "I am the only supervisor, and all business activities would halt completely if I were not there to operate and supervise my employees. I also answer all phone calls and provide technical and customer services." *Id*. As Mr. Au is a founder and only supervisor of IPR, the pre-suit activity stated in IPR's declaration, which Mr. Au executed, opens the door to jurisdictional discovery back to 2007, based on the facts recited in both declarations. Moreover, NTI submits that Mr. Au is acting as IPR's alter ego, so his activities on behalf of that entity in the past beyond the date of the patent-in-suit are relevant to the jurisdictional issue as to him, as well as to IPR. Accordingly, Plaintiff has a right to question Mr. Au with respect to his activities during the time frame from 2007 to date.

Further, the factual non-sequitur needs to be unraveled. IPR claims formation of March 29, 2013 (Dkt. 11-2, IPR Declaration ¶ 6), yet claims its activities extend back to 2007—a period of time that IPR acted solely as a sole proprietorship of Mr. Au.

### Argument and Authorities

"The Eastern District of Texas is well known for its liberal discovery policies and its high expectations that the parties and their counsel be forthcoming in their discovery obligations. ... These policies promote efficient dispute resolution and avoid trial by ambush." *Clear with Computers, LLC v. Hyundai Motor Am., Inc.*, No. 6:09 CV 479, 2011 WL 11562328, at *1 (E.D.

Tex. July 5, 2011). The U.S. Supreme Court has also held that discovery is not "limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389 (1978).

Case law establishes the variability of what the time frame for discovery should be, depending on the circumstances of each case, and particularly supporting a longer time period than the January 7, 2015 date unilaterally selected by Defendants. "The absence of a bright-line rule establishing a temporal framework for the minimum contacts analysis strongly reinforces the fact-specific, case-by-case nature of all jurisdictional analysis. We are persuaded that a broader timeframe … is appropriate here." *McMullen v. European Adoption Consultants, Inc.*, 109 F. Supp. 2d 417, 420 (W.D. Pa. 2000). "[A] plaintiff seeking to establish a defendant's continued presence in a forum is entitled to more than a snapshot capturing a fixed moment in time." *In re Terrorist Attacks on September 11, 2001*, 440 F. Supp. 2d 281, 285 (S.D.N.Y. 2006).

> The court in *In re Terrorist Attacks* stated:
>
> There is no bright line rule capable of helping a court fix the appropriate look-back period for every case. ... [The court referenced] the look-back period approved by the Second Circuit in *Metropolitan Life* for purposes of determining whether the defendant had 'continuous and systematic' contacts with a forum state. … Here, a six-year look-back period does not seem particularly burdensome since NCB claims to have engaged in only limited activities in the United States in recent years. Accordingly, to enable the plaintiffs to determine whether NCB had a presence in the United States sufficient to warrant this Court's exercise of general jurisdiction over it, NCB is directed to provide information concerning its United States contacts for the six-year period preceding the commencement of these suits.

*Id.* (internal citations omitted). The Second Circuit in *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996), addressed the appropriate time frame for minimum contacts, and determined that "'district courts should examine a defendant's contacts with the

forum state over a period that is reasonable under the circumstances….'" *McMullen v. European Adoption Consultants, Inc.*, 109 F. Supp. 2d 417, 419-20 (W.D. Pa. 2000) (quoting *Metropolitan Life Ins. Co.*, 84 F.3d at 569). Other jurisdictions faced with a question of general personal jurisdiction over a foreign defendant have also examined the defendant's contacts with the forum state over a broad timeframe. *See, e.g.*, *Wilson v. Belin*, 20 F.3d 644, 650 (5th Cir. 1994) (five year period); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987) (five year period); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1329-31 (9th Cir. 1984) (three year period).

The *McMullen* court also addressed the question of time frame under *specific* jurisdictional analysis:

> The Court of Appeals for the Third Circuit has found that the minimum contacts inquiry may include events occurring before, during and after the event giving rise to the cause of action. *Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1224 (3d Cir. 1992). *See also Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996) (finding post-contract conduct between defendant and the forum relevant to determination of whether defendant intended to serve the Wisconsin market); *Educational Testing System v. Katzman*, 631 F. Supp. 550, 555-56 (D.N.J. 1986) (rejecting defendant's argument that the timeframe for jurisdictional discovery should end with the filing of the lawsuit, and broadening discovery to include post-complaint contacts between defendant individual and the forum).

*McMullen*, *supra*, 109 F. Supp. 2d at 420.

In Plaintiff's Original Complaint, Plaintiff repeatedly alleges that Mr. Au is the alter ego of IPR (Dkt. #1, ¶¶ 7, 12, 13, 30), a fact bolstered by Mr. Au's declaration that without him, "all business activities would halt completely." (Dkt. #11-1, ¶ 17). Therefore, Mr. Au's prior conduct [that is, anything prior in time to the March 29, 2013 formation of IPR, LLC] is relevant to whether there is personal jurisdiction over the individual defendant, since if there is such personal jurisdiction over the LLC, then it exists over the individual in such instances:

> The patent venue statute makes no distinction between individuals and corporations, and we see no reason why venue is not proper with regard to individual stockholders (who are alter egos of the corporation) by virtue of the corporation's acts where venue would be proper as to a corporate parent or affiliate.

*Minnesota Mining & Manufacturing Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1265 (Fed. Cir. 1985) (citation omitted). Therefore, NTI cannot be limited to the period of the issuance of the patent-in-suit for purposes of its jurisdictional discovery as to the actions of Mr. Au.

The jurisdictional analysis also looks to whether it would be just and equitable to hold the defendants in the current forum. Therefore, Defendants' activities in or connections with Texas or the Eastern District "over the years" are relevant to the jurisdictional analysis, regardless of whether the cause of action arises out of those connections.

In their General Objections, Defendants cite to an unpublished magistrate decision, which was discussed by the district court in *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, No. 07-CV-309, 2008 WL 81111, 2008 U.S. Dist. LEXIS 1352, *3-4 (S.D. Cal. Jan. 8, 2008) (referencing a patent-in-suit time frame). However, the Federal Circuit **reversed** the district court's subsequent dismissal for lack of jurisdiction *on the merits* in that case. As to the *reasonableness and fairness* component of personal jurisdictional analysis, the Federal Circuit noted:

> In addition, *for at least the last five years*, GMReis representatives have traveled to the United States for, among other things, trade shows, which suggests that, as far as GMReis is concerned, *travel itself is not unduly burdensome*.

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De Equip. Medico*, 563 F.3d 1285, 1297, (Fed. Cir. 2009) (emphasis added).

Thus, regardless of whether the specific jurisdictional analysis component of whether the cause of action "arose out of" the activity in question justifies "reaching back further," the issue

of reasonableness and fairness of having to defend in that forum makes Defendants' conduct within Texas and the Eastern District of Texas relevant to Plaintiff's jurisdictional inquiry.

### Request for Expedited Relief

Due to the impending close of jurisdictional discovery (March 17, 2017), Plaintiff requests that the Court to take up and consider this motion on an expedited basis.

### Request for Attorney Fees

The need for motion practice with respect to this issue was unnecessary.  Given that Defendants have relied on evidence in their motion to dismiss which significantly predates the arbitrary cutoff imposed for their discovery responses, justice would support an award of attorney fees to Plaintiff for the fees incurred in filing this motion.

### Prayer

Plaintiff respectfully requests that the Court grant its motion to compel, and that Defendants be ordered to correct the deficiencies in and supplement their jurisdictional discovery responses and production to beginning in January 1, 2007, no later than five (5) days after the Court's Order.  Plaintiff also requests to be awarded reasonable attorneys' fees for the time and expense incurred in litigating its emergency motion to compel, and any other relief that the Court finds that Plaintiff is entitled.

Dated:  January 25, 2017.                      Respectfully submitted,

/s/Richard L. Schwartz
Richard L. Schwartz
Texas Bar No. 17869500
rschwartz@whitakerchalk.com
Lead Counsel in Charge
Thomas F. Harkins, Jr.
Texas Bar No. 09000990
tharkins@whitakerchalk.com
Enrique Sanchez, Jr.
Texas Bar No. 24068961
rsanchez@whitakerchalk.com
**WHITAKER CHALK SWINDLE**
  **& SCHWARTZ PLLC**
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Phone: (817) 878-0500
Fax: (817) 878-0501

John D. Titus
jtitus@hartmantitus.com
Arizona Bar No. 012912
Bradley P. Hartman
Arizona Bar No. 017263
bhartman@hartmantitus.com
**HARTMAN TITUS PLC**
7114 E. Stetson Drive, Suite 205
Scottsdale, AZ 85251-3250
Phone: (480) 659-0019
Fax: (480) 659-3304

Clyde Moody Siebman
Texas Bar No. 18341600
clydesiebman@siebman.com
Elizabeth S. Forrest
Texas Bar No. 24086207
**SIEBMAN BURG PHILLIPS**
  **& SMITH LLP**
300 N Travis St
Sherman, TX 75090
Phone:  (903) 870-0070
Fax:  (903) 870-0066
**Attorneys for Plaintiff**
**Neal Technologies, Inc.**
**d/b/a Bullet Proof Diesel**

## CERTIFICATE OF CONFERENCE

      Personal conferences by telephone were held on January 19, 2017 between me, Clyde M. Siebman, Wendy K. Akbar, and Amanda A. Abraham on the merits of this motion in compliance with the meet and confer requirement of LOCAL RULE CV-7(h). Follow up communications between me and Wendy Akbar on January 24, 2017 have failed to reach a resolution. A reasonable effort has been made to resolve the dispute without the necessity of court intervention and the effort failed. Therefore it is presented to the Court for determination.

                                                    */s/Richard L. Schwartz*
                                                    Richard L. Schwartz

## CERTIFICATE OF SERVICE

      I hereby certify that this document is being filed by ECF and is therefore being served on counsel of record for Plaintiff on this 25th day of January, 2017; specifically:

| | |
|---|---|
| Wendy K. Akbar | Carl R. Roth |
| *pro hac vice* | E-mail: cr@rothfirm.com |
| E-mail: wakbar@venjuris.com | Amanda A. Abraham |
| A David Logan | E-mail: aa@rothfirm.com |
| *pro hac vice pending* | Todd W. Smith |
| E-mail: dlogan@venjuris.com | E-mail: ts@rothfirm.com |
| John C. Mascari | **ROTH LAW FIRM** |
| *pro hac vice pending* | 115 North Wellington, Suite 200 |
| E-mail: jmascari@venjuris.com | Marshall, Texas 75670 |
| **VENJURIS P.C.** | Tel: 903.935.1665 |
| 1938 E. Osborn Road | Fax: 903.935.1797 |
| Phoenix, AZ 85016 | |
| Tel: 602-396-7637 | |
| Fax: 602-631-4529 | |

                                                    */s/Richard L. Schwartz*
                                                    Richard L. Schwartz